[Civ. No. 6604. Fourth Dist. Jan. 19, 1962.]

CITY OF BURBANK, Plaintiff and Appellant, v. ANDREW NORDAHL et al., Defendants and Respondents; NATHAN LIBOTT, Real Party in Interest.

314

Samuel Gorlick and Archie L. Waters, City Attorneys, and George W. Irving, Senior Assistant City Attorney, for Plaintiff and Appellant.

Laurence B. Martin and Clyde C. Shoemaker for Defendants and Respondents.

No appearance for Real Party in Interest.

COUGHLIN, J.—The issues on this appeal concern, (1) the amount of interest payable to the defendants in an eminent domain action when the plaintiff takes possession of the subject property prior to payment of the sum prescribed by the interlocutory judgment therein; (2) the validity and effect of a stipulation; (3) the amount of the fee allowable to an appraiser-witness appointed by the court, who testified in the trial of the action; (4) the right of such plaintiff to recover costs on account of a change of venue made upon motion of the defendants; and (5) the right to recover costs of a deposition not used.

The plaintiff and appellant herein, the City of Burbank, brought this action in eminent domain to acquire property from the defendants and respondents herein, Mr. and Mrs. Nordahl. After issues drawn, the case proceeded to trial before the court without a jury, and on August 12, 1958, an interlocutory judgment was entered decreeing condemnation and awarding the defendants Nordahl $235,779, which included $2,200 on account of special damages, incorporated in the judgment by stipulation, and also awarded $1.00 to other

defendants who claimed an interest in the Nordahl property. Three days later, i.e., August 15, 1958, the plaintiff deposited $235,779 in court. In due course, the defendants Nordahl moved for a new trial, contending that the evidence was insufficient to support the judgment, i.e., that the amount of damages awarded them should have been greater. On October 3, 1958, the plaintiff noticed its intention to move for an order granting them possession of the condemned property, and requiring that $13,236.65 of the amount theretofore deposited by it be withheld from the defendants pending final determination of the case. This was followed, i.e., on October 14, 1958, by the defendants' notice of motion for an order directing payment to them of the total amount of $235,779. It is obvious that these motions were made pursuant to the provisions of section 1254 of the Code of Civil Procedure which, as it then existed,[1] provided that at any time after trial and judgment the plaintiff in an eminent domain action might pay into court "for the defendant" the full amount of the judgment, together with such further sum as might be required by the court, whereupon the court might authorize the plaintiff to take possession of the property to be acquired, and further provided that the defendant would be entitled to demand and receive the money so deposited upon obtaining an order therefor from the court, without prejudice to his right to seek further compensation. On October 17, appropriate motions pursuant to the foregoing notices were made by the respective parties, and taken under submission. On the same date the

[1]Section 1254 of the Code of Civil Procedure was amended in 1961. At the time under consideration, pertinent parts thereof provided: "At any time after trial and judgment entered or pending an appeal from the judgment to the Supreme Court, whenever the plaintiff shall have paid into court, for the defendant, the full amount of the judgment, and such further sum as may be required by the court as a fund to pay any further damages and costs that may be recovered in said proceeding, . . . the Superior Court in which the proceeding was tried may, upon notice of not less than 10 days, authorize the plaintiff, if already in possession, to continue therein, and if not, then to take possession of and use the property during the pendency of and until the final conclusion of the litigation, and may, if necessary, stay all actions and proceedings against the plaintiff on account thereof. . . . The defendant, who is entitled to the money paid into court for him upon any judgment, shall be entitled to demand and receive the same at any time thereafter upon obtaining an order therefor from the court. It shall be the duty of the court, or a judge thereof, upon application being made by such defendant, to order and direct that the money so paid into court for him be delivered to him upon his filing a satisfaction of the judgment, or upon his filing a receipt therefor, and an abandonment of all defenses to the action or proceeding, except as to the amount of damages that he may be entitled to in the event that a new trial shall be granted."

court heard the defendants' motion for a new trial; in lieu of granting the same, vacated the findings and judgment theretofore entered; opened the case for a further hearing on the issue of damages; and later caused its written order in the premises to be filed, i.e., on October 28, 1958. Contemporaneously, the court indicated its intention to appoint an appraiser to appraise the subject property and testify with respect to its value, and filed a written order in the premises which will be considered hereafter in connection with the controversy over the amount of the fee payable to the person appointed, which is the basis of one of the issues on this appeal.

On November 3, 1958, by minute entry, the court indicated its intention to grant the plaintiff's motion for possession upon condition that it deposit the additional sum of $20,000; further indicated its intention to grant the defendants' motion in part by authorizing the withdrawal of $222,543 from the funds on deposit; and directed each party to prepare a written order covering the subject matter of its or their motion. Eleven days later a written order with respect to the plaintiff's motion was filed, authorizing it to take possession of the subject property pursuant to the provisions of section 1254 of the Code of Civil Procedure upon deposit of the further sum of $20,000. Thereupon the additional deposit was made and possession taken. Subsequently, the defendants moved to vacate the foregoing order, but this motion was denied. Thereafter, i.e., on January 7, 1959, a written order with respect to the defendants' motion was filed; directed that they be permitted to withdraw $222,543, which meant that the sum of $13,236 of the original deposit of $235,779 was being withheld at the plaintiff's request; pursuant thereto the defendants were paid the authorized amount; and gave their receipt therefor without prejudice.

Several months later the case came on for a further hearing on the issue of damages; the court then determined that the value of the property taken was $260,000 instead of $233,580, as previously found, being an increase of $26,420 over the latter figure; and caused findings of fact, conclusions of law and an interlocutory judgment of condemnation to be entered on all of the issues raised by the pleadings. The plaintiff has appealed from parts of this judgment.

Previously, the parties had entered into a stipulation which was used as the basis for a part of the judgment. The validity and effect of this stipulation are contested; are issues on this appeal; and will be considered hereafter.

In determining the amount of interest payable by the plaintiff to the defendants the court used a formula to which both parties object, although the plaintiff, alone, has appealed. The judgment sets forth its method of computation as follows:

"... interest at 7% on $262,199.00, commencing thirty days after August 12, 1958 (date of entry of judgment) to October 31, 1958 (date of order authorizing withdrawal of funds and payment thereof to defendants Nordahl), said interest being in the amount of $2,463.95; also interest at 7% per annum on $13,236.65 withheld from the defendants Nordahl on motion of plaintiff city, from January 7, 1959 (date of payment of $222,543.00 to defendants Nordahl), to the date payment thereof is made to defendants Nordahl; together with interest at 7% per annum on the sum of $26,420.00, being the additional amount of the judgment herein awarded defendants Nordahl, said interest to run from January 7, 1959 to date of payment thereof by said plaintiff City to defendants Nordahl."

The formula used, in substance, and except for some minor omissions which are unexplainable, directs payment of interest on the amount of the judgment finally entered, i.e., $262,199, from a date thirty days after entry of the originally rendered judgment, which subsequently had been set aside, less a credit for interest on the amount paid to the defendants pursuant to section 1254 of the Code of Civil Procedure, from the date of such payment, i.e., interest on $222,543 from January 7, 1959.

We conclude that neither the formula used by the court nor that proposed by the defendants or by the plaintiff properly comports with the law in the premises.

 Under the rule applicable prior to a statutory enactment in 1961,[2] the interlocutory judgment in an eminent domain proceeding finally determining the compensation payable to a condemnee bears interest from date of entry. (*Bellflower*

[2]Section 1255b of the Code of Civil Procedure, as amended in 1961 (Stats. 1961, ch. 1613, p. 3450), added provisions governing the payment of interest under a situation such as that presented by the case at bar. However, section 11 of the amendatory statute (Stats. 1961, ch. 1613, p. 3451), in effect excludes the application of these provisions to the instant case by providing that they, as well as others, apply to pending eminent domain proceedings "in which no order authorizing the plaintiff to take possession of the property sought to be condemned prior to the final order of condemnation has been made prior to the effective date of this act." The order authorizing the plaintiff to take possession of the property in the instant case was made on November 14, 1958, while the amendatory statute became effective on September 15, 1961.

*City School Dist.* v. *Skaggs,* 52 Cal.2d 278 [339 P.2d 848] ; *Capistrano Union High School Dist.* v. *Capistrano Beach Acreage Co.,* 188 Cal.App.2d 612, 614 [10 Cal.Rptr. 750] ; *People* v. *Superior Court,* 145 Cal.App.2d 683, 688 [303 P.2d 628].) The right to interest, as such, springs from the judgment. (*Capistrano Union High School Dist.* v. *Capistrano Beach Acreage Co., supra,* 188 Cal.App.2d 612, 614; *People* v. *Superior Court, supra,* 145 Cal.App.2d 683, 688.) In the instant case the judgment of January 7, 1960, is the only judgment in existence and, consequently, is the only basis for any claim to interest. When the findings of fact, conclusions of law and the judgment of August 12, 1958, were set aside, they ceased to exist; thereupon the status of the action was the same as though no findings, conclusions or judgment ever had been made or entered; and those which followed the further hearing are the only ones in the case. (*Pacific Home* v. *County of Los Angeles,* 41 Cal.2d 855, 857 [264 P.2d 544] ; *Gottbehuet* v. *Fox,* 130 Cal.App.2d 336, 340 [278 P.2d 925] ; *George* v. *Bekins Van & Storage Co.,* 83 Cal.App.2d 478, 480 [189 P.2d 301] ; *Robinson* v. *Fidelity & Deposit Co.,* 5 Cal. App.2d 241, 243 [42 P.2d 653] ; *California Machinery etc. Co.* v. *University City Syndicate, Inc.,* 3 Cal.App.2d 425, 426 [39 P.2d 853] ; *cf. Erlin* v. *National Union Fire Ins. Co.,* 7 Cal.2d 547, 549 [61 P.2d 756] ; *Central Sav. Bank of Oakland* v. *Lake,* 201 Cal. 438, 443 [257 P. 521].) The earlier judgment does not bear interest and no reason exists for using its entry date as the commencement date for the running of interest on the subsequently entered judgment.

In substance, by its findings, the trial court determined that as compensation for the taking in question the defendants were entitled to the value of the land taken, special damages in the sum of $2,200, and the various items of interest heretofore noted, and by its decree awarded them the total of these amounts less the sum of $222,543 previously paid to them pursuant to the provisions of section 1254 of the Code of Civil Procedure. The latter amount properly was credited against the total amount of compensation to which the defendants were entitled. However, insofar as the judgment includes items purporting to be interest payable on parts of the award for designated periods, commencing with the date of entry of the vacated interlocutory judgment, i.e., August 12, 1958, it is in error and should be reversed.

On the other hand, the attempt of the judgment to award defendants complete compensation for the loss of possession

320

of their property which followed the proceedings taken under section 1254 of the Code of Civil Procedure was proper. Where a condemner takes possession of property sought to be condemned prior to judgment finally determining the compensation payable to the condemnee, the award to the latter should include "the actual cash value of the use of said property from the date of the taking possession thereof up to the date of judgment." (*Metropolitan Water Dist.* v. *Adams*, 16 Cal.2d 676, 680 [107 P.2d 618]; *People* ex rel. *Dept. Public Works* v. *Loop*, 161 Cal.App.2d 466, 471 [326 P.2d 902].) In determining the amount of compensation payable for such use during the interim period, the court may adopt the legal rate of interest on the value of the property taken as the basis for an award. (*Metropolitan Water Dist.* v. *Adams*, *supra*, 16 Cal.2d 676, 679-683; *People* ex rel. *Dept. Public Works* v. *Loop*, *supra*, 161 Cal.App.2d 466, 471; *People* v. *Superior Court*, *supra*, 145 Cal.App.2d 683, 691; *cf. City of Los Angeles* v. *Aitken*, *supra*, 32 Cal.App.2d 524, 533—overruled on other grounds in *Southern Pacific Utility Dist.* v. *Silva*, 47 Cal.2d 163, 165 [301 P.2d 841].)[3]

In those instances where the condemner takes possession under section 1254 of the Code of Civil Procedure, the deposit of money in court for the condemnee affords an offsetting factor which should be considered in determining the damages sustained by the latter as a result of the ensuing loss of possession. Under such circumstances, the money deposited for the condemnee becomes available to him under the rules prescribed by the statute; he is entitled to the use of that money; and upon receipt thereof actually may put it to use. The value of this use is a proper offset against the value of the use of the property obtained by the condemner.[4] However, it should be noted that the provisions of section 1254 apply where the plaintiff makes the deposit into court "for the defendant." The deposit is not paid into court for the de-

[3]Section 1255b of the Code of Civil Procedure adopted in 1961, but not applicable to the instant case (see fn. 2) uses the interest on judgment formula as a basis for compensation when possession of property is taken prior to judgment. Section 1255b of the Code of Civil Procedure as adopted in 1959 provided for interest on the amount of the award from date of possession in those instances where possession was taken prior to trial, i.e., under section 1243.5 of the Code of Civil Procedure, but is not applicable to the instant case where possession was taken after judgment, i.e., under section 1254 of the Code of Civil Procedure.

[4]Section 1255b of the Code of Civil Procedure as amended in 1961 also takes this offset into consideration.

fendant until the latter may take it. (*People* ex rel. *Dept. Public Works* v. *Loop, supra,* 161 Cal.App.2d 466, 478; *Mt. Shasta Power Corp.* v. *Dennis,* 66 Cal.App. 186, 190 [225 P. 877].) In the case at bar, the plaintiff originally deposited $235,779, but moved the court that $13,236 thereof be withheld pending final determination of the action. The court granted this motion. As a consequence, the defendants received only $222,543 of the amount deposited. Subsequently, the plaintiff, pursuant to court orders, deposited an additional $30,000 into court but the defendants were not permitted to take any part of this additional sum until after the judgment, from which this appeal has been taken, had been filed. Therefore, any credit allowed the plaintiff as an offset against compensation payable to the defendants for the loss of use of their property prior to judgment should be limited to the value of the use of the money actually paid to them under section 1254. On the other hand, as the court simultaneously indicated its intention to grant the plaintiff's motion for possession of the subject property and to permit the defendants to withdraw the sum of $222,543 from the deposit previously made, the right of the defendants to the use of that money will be deemed to have vested on the date when the written order authorizing the plaintiff to enter into possession was filed. The defendants should not be permitted to profit by their delay in preparing the order directing payment to them.

At this juncture it is proper to interject an observation concerning the effect of a deposit pursuant to section 1254. Where the deposit is made after entry of a judgment finally determining the compensation payable in the premises, and is for the full amount thereof, interest thereon stops. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 177 Cal. 249 [170 P. 426]; *City of Los Angeles* v. *Oliver,* 110 Cal.App. 248 [294 P. 760].) However, to accomplish this result the deposit must be made in accord with the requirements of section 1254 (*People* ex rel. *Dept. Public Works* v. *Loop, supra,* 161 Cal. App.2d 466); must be "for the defendant"; and must be withdrawable by the defendant.

It has been suggested that the provisions of section 1249 of the Code of Civil Procedure,[5] as they existed in 1960,

---

[5]Applicable parts of section 1249 of the Code of Civil Procedure provide: ". . . If an order be made letting the plaintiff into possession, as provided in section 1254, the compensation and damages awarded shall draw lawful interest from the date of such order." In 1961 section 1249 of the Code of Civil Procedure was amended by deleting the aforesaid provisions.

applied to this case; that if a condemner is let into possession under an order as provided in section 1254 of that code, the condemnee is entitled to interest on the compensation and damages awarded from the date of such order. In *Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra,* 177 Cal. 249, it was held that the provisions of section 1249 referred to an order made under the provisions of section 1254 as the latter section previously existed, which did not provide for immediate compensating payment to the defendant, and not to an order made under its present provisions which authorize the defendant to withdraw the deposit made into court. (Accord: *City of Los Angeles* v. *Oliver, supra,* 110 Cal.App. 248, 255.) A contrary concept is indicated in *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 758 [185 P.2d 597], but the court in that case gave no consideration to its prior decision in *Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra,* 177 Cal. 249; the statement contained therein was expressed as obiter dicta; and cannot be accepted as controlling. No reason exists for allowing a condemnee to obtain both the use of the money deposited by the condemner and interest on the "compensation and damages awarded."

The case at bar is unusual in that the proceedings to obtain possession under section 1254 were instituted after entry of judgment, as provided in that section, but the judgment in question subsequently was set aside. The statute, when read as a whole, clearly indicates an intention to provide a method for the taking of possession under such circumstances. (*Heilbron* v. *Superior Court,* 151 Cal. 271 [90 P. 706].) However, the unusual nature of the instant case clearly distinguishes it from the cases cited by both parties in support of their respective positions, i.e., *Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra,* 177 Cal. 249; *People* ex rel. *Dept. Public Works* v. *Loop, supra,* 161 Cal.App.2d 466, and *City of Los Angeles* v. *Oliver, supra,* 110 Cal.App. 248, which involve situations where the proceedings under section 1254 were taken after entry of, and pending an appeal from, a judgment finally determining the compensation payable to the condemnee, and for this reason are not controlling.

We hold that the trial court should determine the compensation payable to the defendants on account of the loss of use of their property from November 14, 1958, i.e., the date when possession was given to the plaintiff, to date of judgment; that, from the evidence before us, in making such determination credit should be given the plaintiff for the

use of the money paid the defendants, i.e., the sum of $222,543 from November 14, 1958, being the date when such money was available to them, to date of judgment; that the net result of this determination should be added to the value of the defendants' interest in the property taken plus the amount of special damages agreed upon, i.e., $2,200; that from the total of these amounts there should be deducted the sum of $222,543, i.e., the amount previously paid the defendants on account; and that judgment should be entered in the resulting amount as compensation payable by the plaintiff to the defendants as of date of entry thereof. Under the general rule, this amount will bear interest at the legal rate until paid. If, pursuant to the order of April 5, 1960, which is one of the orders from which the plaintiff has appealed, the defendants have received additional money from the deposit heretofore made by the plaintiff, the latter will be entitled to an additional credit in accord with the formula heretofore prescribed; the value of the use of this money should be offset against the value of the use of defendants' property; and the amount of additional funds received should be deducted from the total amount of the compensation payable to them.

Prior to the further hearing and the subsequent judgment from which this appeal has been taken, the plaintiff and defendants entered into a stipulation which provided, (1) that the plaintiff should "assume and take the subject property, subject to taxes and penalties, in the amount of four thousand dollars ($4,000.00), which are to be ordered cancelled," and if the defendants were obligated to pay taxes and penalties in excess of $4,000, such excess should be deducted from the amount of the award to them and paid to the tax collector of Los Angeles County, and (2) that "damages by way of interest up to, but not exceeding four thousand dollars ($4,000.00), legally due to the defendants Nordahl from the plaintiff upon the amount of just compensation awarded for subject property, is waived and cancelled," but any amount in excess thereof should be paid into court for defendants.

On January 6, 1960, which was two days before entry of the interlocutory judgment appealed from, the County of Los Angeles filed an answer herein, claiming a lien against the subject property for taxes and penalties in the sum of $5,813.14. No order granting permission to file this answer was obtained. The judgment provided that the property taken should pass subject to taxes and penalties up to $4,000 which "shall be paid by the plaintiff" to the tax collector of Los

Angeles County, and that the amount of such taxes and penalties in excess of $4,000 "shall be a lien upon the award herein and paid out of such award to the defendants." The plaintiff makes two objections to this part of the judgment. In the first instance, it claims that by the judgment the amount of taxes and penalties in excess of $4,000 is to be paid to the defendants, which is not in accord with the stipulation. This objection involves a misconception of the effect of the language used. Correctly interpreted, the judgment provides that the excess amount of taxes and penalties shall be paid out of the award in favor of the defendants, and conforms to the stipulation. In the second place, the plaintiff claims that the provision requiring the city to pay the $4,000 tax and penalty item to the tax collector also is not in accord with the stipulation; that it had agreed only to take the property subject to this item; and that the taxes and penalties were to be cancelled. It is claimed that the attorney for the plaintiff, who executed the stipulation, believed that the city could obtain a cancellation of the taxes and penalties in question, but thereafter concluded that, under a recently enacted amendment to the controlling statute, i.e., section 4986 of the Revenue and Taxation Code, the city could not obtain such a cancellation. Urging error in the alleged misinterpretation of the stipulation by the court as incorporated in the judgment and asking for relief from the mistaken belief of its attorney with respect to the law, the city moved to be relieved from the stipulation. This motion was denied and its denial is cited as prejudicial error. We have reviewed the many and varied claims made by both parties in connection with the subject at hand and have concluded that neither the construction placed upon the stipulation by the trial court, nor its refusal to permit the plaintiff to be relieved therefrom, constituted error. Without setting them forth in detail, the record establishes the existence of many equitable considerations legally sufficient to support the order denying plaintiff's motion to be relieved from its agreement. Such a motion is addressed to the sound discretion of the trial court, and its decision in the premises will not be interfered with on appeal in the absence of a clear showing of an abuse of that discretion. (*Capital National Bank* v. *Smith*, 62 Cal.App.2d 328, 345 [144 P.2d 665]; *Cohn* v. *Cohn*, 47 Cal.App.2d 683, 691 [118 P.2d 903]; *Brown* v. *Superior Court*, 10 Cal.App.2d 365, 368 [52 P.2d 256].)

 It is contended that the stipulation was in violation of the law; is unlawful; and, therefore, void. This contention

is based on the plaintiff's concept of the effect of the 1959 amendment to section 4986 of the Revenue and Taxation Code. Prior to that amendment, the section in question provided that uncollected taxes and penalties levied against property acquired by a city through eminent domain proceedings "may, on satisfactory proof, be canceled by the auditor on order of the board of supervisors with the written consent of the district attorney." The amendment struck the foregoing provisions from the section and provided, in substance: (1) that such taxes and penalties, upon acquisition by the city, shall be transferred to the unsecured roll; no cancellations thereof shall be made; and collection thereof shall be effected in the manner provided by section 2921.5 of the Revenue and Taxation Code; and also, (2) that in the event "the purchase price" of such property is deposited with the court in an eminent domain proceeding, all delinquent taxes and penalties which are a lien against the property, shall be paid out of the "award." There is nothing in this amendment which prohibits the city from paying such taxes and penalties. In the case at bar, by the stipulation in question, the city agreed to assume any taxes and penalties up to $4,000 and the defendants agreed to waive any interest up to the same amount. Even though the city believed it could get a cancellation of its assumed obligation, the defendants were not a party to the cause of this belief and, as indicated by the record, in reliance upon the stipulation, agreed to pay $1,000 to a codefendant, by way of compromise, for its interest in their property. The trial court was fully justified in refusing to set aside the stipulation. (*Morrow* v. *Morrow,* 40 Cal.App.2d 474, 485 [105 P.2d 129].)

The plaintiff claims that by the terms of the stipulation it did not assume the unpaid taxes and penalties. It directs our attention to the context of the stipulation wherein it is stated that the "City is to assume and take the subject property, subject to taxes and penalties, in the amount of four thousand dollars ($4,000.00)"; contends that the term "assume" refers only to the "subject property" and not to "taxes and penalties"; and claims that the court erred in directing payment thereof by it. This is an instance where common sense requires a disregard of punctuation. (*Saffold* v. *Horne,* 72 Miss. 470 [18 So. 433].) The term "assume" as used in the stipulation in question referred to the unpaid taxes and penalties; under accepted usage included an agreement "to pay" the same (*Jones* v. *Eddy,* 90 Cal. 147, 149 [27 P.

190]; *Wright* v. *Lowe,* 140 Cal.App.2d 891, 895 [296 P.2d 34]); and the trial court's determination accordingly was correct.

In directing that the city should pay the unpaid taxes and penalties up to the sum of $4,000 the court was carrying out the intention of the stipulation in accord with the law, which it was obligated to do. A stipulation embraces whatever its terms reasonably imply. (See 83 C.J.S. § 11, subd. (d), and cited cases.)

When the subject matter of a stipulation is incorporated in a judgment, the court is not required to accept the language or phraseology used by the parties, but may interpret the same, and carry the intent thus determined into its judgment. (*Estate of Howe,* 88 Cal.App.2d 454, 459 [199 P.2d 59].) In the instant case the trial court properly performed its duty in the premises.

The provision in the stipulation that the taxes and penalties were to be ordered cancelled appeared by way of interjection, and was mere surplusage. The parties to this transaction had no authority to agree to such cancellation and the court had no authority to effect the same. A stipulation as to an immaterial matter may be disregarded. (*Jackson* v. *Puget Sound Lumber Co.,* 123 Cal. 97, 100 [55 P. 788]; *In re Lombardi's Estate,* 39 N.Y.S.2d 62.) The omission from the judgment of an order cancelling the taxes and penalties in question was proper.

The contention that the stipulation was invalid because the County of Los Angeles did not participate therein also is without merit. As indicated, the agreement involved an assumption of certain taxes and penalties by the city and the waiver of interest by the defendants. The reference to cancellation of the taxes was surplusage. Consequently, the County of Los Angeles was not a necessary party to the agreement.

We hold that the judgment of the court with respect to the payment of taxes and penalties by the plaintiff was proper. However, it should be noted that the only "interest," as such, involved in this case is the interest on the judgment after entry thereof; through their stipulation the parties agreed that "damages by way of interest up to, but not exceeding four thousand dollars ($4,000.00), legally due to the defendants Nordahl from the plaintiff upon the amount of just compensation awarded for subject property, is waived and cancelled"; and in view of the fact that the judgment appealed

from refers to items of interest accruing prior to entry thereof and directs that, pursuant to the stipulation in question, the plaintiff should be given credit "upon the interest *found* to be due and owing," the court should be permitted to review this portion of its judgment and the application of the stipulation thereto in the light of the views expressed in this opinion. (Italics ours.)

After setting aside the original interlocutory judgment and directing a further hearing, the court made an order appointing Nathan Libott as an "expert witness to investigate and testify" at that hearing. The judgment subsequently rendered conditioned entry of a final order of condemnation, among other things, upon the payment by the plaintiff of "the fee and charge of the expert appointed by the court herein as fixed and determined by the Court." Thereafter the fee was fixed at $3,150. The amount thereof was based on a claim for 21 days of expert services at $150 per day, during two of which the expert was a witness in court, and the remainder of which were used in making his investigation. From the order fixing this fee the plaintiff appeals, contending that the amount thereof should not have exceeded $50 per day, and cites section 1266.2 of the Code of Civil Procedure in support of its position. The section relied upon provides:

"In any action or proceeding for the purpose of condemning property where the court may appoint appraisers, referees, commissioners, or other persons *for the purpose of determining the value of such property and fixing the compensation thereof,* and may fix their fees or compensation the fee or compensation shall not exceed fifty dollars ($50) a day." (Italics ours.)

On behalf of Mr. Libott the defendants argue that section 1871 of the Code of Civil Procedure controls. The latter section provides:

"Whenever it shall be made to appear to any court or judge thereof, either before or during the trial of any action or proceeding . . . pending before such court, that expert evidence is, or will be required by the court . . . such court or judge may, . . . on motion of such court or judge, appoint one or more experts to *investigate* and *testify* at the trial of such action or proceeding relative to the matter or matters as to which such expert evidence is, or will be required, and such court or judge may fix the compensation of such expert . . . in addition to his or their services as a witness or wit-

nesses, *at such amount or amounts as to the court or judge may seem reasonable."* (Italics ours.)

In his discussion preliminary to making the order in question, the trial judge referred to the person appointed as an appraiser. The same designation is used in a minute order preceding the actual appointment. However, at no time did the court indicate that the person referred to was to be appointed "for the purpose of determining the value of" the subject property, *and* "fixing the compensation thereof." The order appointing Mr. Libott was entitled "Order Appointing Expert Witness"; recited that "further expert evidence will be required in relation to the determination of the amount of compensation to which the defendants shall be justly entitled," and declared that he was "selected and appointed by the Court as an independent and impartial expert witness to investigate and testify at the further trial of this action relative to the matter of determining the fair market value of the subject real property involved in this action." The court's determination that its appointment was made pursuant to section 1871, rather than for the purposes designated in section 1266.2, and that it was authorized to fix a reasonable fee for the services rendered, is fully supported by the law and the evidence.

The contention of the plaintiff that section 1266.2 places a limit upon the amount of compensation payable to a court-appointed expert witness in an eminent domain proceeding, who has the qualifications of an appraiser, is without merit. That section refers to a type of service rendered rather than to the qualifications of the person performing them; applies to "appraisers, referees, commissioners, *or other persons*"; and is concerned with services rendered "for the purpose of determining the value" *and* "fixing the compensation" of the property being condemned. (Italics ours.) Thus, the statute expressly restricts its application to a designated service and, in addition, under the maxim of *noscitur a sociis* (*Fox* v. *Hale & Norcross S.M. Co.,* 108 Cal. 369, 426 [41 P. 308]), its application to the services of an appraiser is limited to those in the designated area which are of the character performed by referees or commissioners. These are not the type of services rendered by an appraiser who qualifies himself as a witness as to the value of the particular property by making an investigation into such value, and who thereafter testifies with respect to his findings and his opinion in the premises. Such an appraiser does not determine the value of property

in the same sense as a referee or commissioner would make such determination, nor does he fix the compensation thereof.[6]

The authority of a court to appoint an expert pursuant to section 1871 extends to condemnation cases (*Metropolitan Water Dist.* v. *Adams,* 23 Cal.2d 770, 772-774 [147 P.2d 6]); that section also confers an unqualified authority to fix the compensation payable to a witness appointed thereunder; and there is nothing in the provisions of section 1266.2 which purports to limit that authority. The latter section makes no reference to the services of a witness. No reason exists for distinguishing between the compensation applicable in an eminent domain action to an expert, such as an appraiser, who makes an investigation and upon the information obtained thereby, gives his opinion relative to the value of the land, and the compensation applicable to an expert, such as a geologist who makes an investigation and upon the information obtained thereby, gives his opinion with respect to the structure of the land, such as its oil-bearing potentiality, which would be a material factor in a determination respecting its value. In either instance the fee is chargeable against the condemner. (See *Metropolitan Water Dist.* v. *Adams, supra,* 23 Cal.2d 770, 772-774.)

Where statutes are subject to interpretation, that which will lead to the more reasonable result will be adopted. (*Metropolitan Water Dist.* v. *Adams,* 32 Cal.2d 620, 630 [197 P.2d 543].) The trial court properly interpreted the statutes in question. The order fixing the fee of Mr. Libott at $150 per day should be affirmed.

As required by section 1243 of the Code of Civil Procedure this action was commenced in the Superior Court of Los Angeles County and by rule thereof, the complaint was filed in the Burbank branch of that court. Thereafter, the defendants, pursuant · to section 394 of the Code of Civil Procedure, moved for a transfer of the cause to San Bernardino County, upon the ground that they were nonresidents of the plaintiff city. The plaintiff opposed this motion. The court ordered a transfer to Orange County. After judgment, the plaintiff filed a memorandum of costs claiming that under the provisions of section 394 of the Code of Civil Procedure,[7]

---

[6]For an example of a situation where a referee may be appointed to determine the value of property and fix the compensation thereof, see sections 38080-38102, Government Code.

[7]Pertinent parts of section 394 of the Code of Civil Procedure provide: ". . . Whenever an action or proceeding is brought by a county,

it was entitled to reimbursement for additional living and traveling expenses incurred by its attorney and witnesses, which had been occasioned by the transfer. Upon motion of the defendants the court ordered this cost bill stricken, and the plaintiff appeals from this order.

The code section in question makes no provision for additional expenses incurred by a party's attorney, and the claim for such expenses obviously should be denied.

 In support of the order in question the defendants rely upon the general rule that "in a proceeding in eminent domain, the party seeking condemnation should be required to pay not only his own costs, but all proper costs of the owner of the land incurred in good faith." *Heimann* v. *City of Los Angeles, supra,* 30 Cal.2d 746, 752; *cf. Oakland* v. *Pacific Coast Lumber etc. Co.,* 172 Cal. 332, 334 [156 P. 468, Ann. Cas. 1917E 259]; *San Joaquin etc. Irr. Co.* v. *Stevinson,* 165 Cal. 540 [132 P. 1021].) The basis for this rule is the constitutional guarantee that:

"Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . . ." (Cal. Const., art 1, § 14); that, absent any agreement in the premises, the amount of such compensation must be ascertained by a judicial proceeding; and the condemner "should pay all the expenses which attach to the process." A statute relating to the recovery of costs which, when applied to an eminent domain action, contravenes the constitutional guarantee is, to that extent, invalid. (*San Joaquin etc. Irr. Co.* v. *Stevinson, supra,* 165 Cal. 540, 542; *City & County of San Francisco* v. *Collins,* 98 Cal. 259, 262 [33 P. 56].)

---

city and county, or city, against a resident of another county, city and county, or city, or a corporation doing business in the latter, the action or proceeding must be, on motion of either party, transferred for trial to a county, or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and other than that in which the plaintiff is situated, if the plaintiff is a city, and other than that in which the defendant resides, or is doing business, or is situated. . . . If the demand for transfer be made by one party and the opposing party does not consent thereto the additional costs of the nonconsenting party occasioned by the transfer of the cause, including living and traveling expenses of said nonconsenting party and material witnesses, found by the court to be material, and called by such nonconsenting party, not to exceed five dollars per day each in excess of witness fees and mileage otherwise allowed by law, shall be assessed by the court hearing the cause against the party requesting the transfer. To the extent of such excess, such costs shall be awarded to the nonconsenting party regardless of the outcome of the trial."

Section 394 authorizes a nonresident defendant in a condemnation action instituted by a city, to request a transfer of the proceeding to another locality. This is a part of the process provided by law for the determination of the issues between such parties. Its purpose is to protect each of them from local bias by transfer to a neutral county. (*City of Oakland* v. *Darbee*, 102 Cal.App.2d 493, 498 [227 P.2d 909]; *City of Stockton* v. *Ellingwood*, 78 Cal.App. 117, 121 [248 P. 272].) The plaintiff argues that the right thus conferred upon the defendants in the case at bar was optional; that in accepting the benefits conferred by the statute they should be required to accept the accompanying burdens; and, therefore, they must assume the additional costs occasioned by the transfer. In response the defendants argue that a like situation exists with respect to their right to a jury trial; that such may be waived; but even though not waived, they may not be charged for the costs of a jury. In either instance, the rights conferred by law are a part of the trial process of determining the amount of just compensation which the plaintiff constitutionally is required to pay to the defendants before acquiring the latter's property, and the amount awarded them should not be decreased either by items of cost incurred by them or by items of cost incurred by the plaintiff.

Cases cited by the plaintiff in support of its position which involve costs incurred after trial, i.e., *Los Angeles P. & G. Ry.* v. *Rump*, 104 Cal. 20 [37 P. 859] (*cf. Oakland* v. *Pacific Coast Lumber etc. Co., supra*, 172 Cal. 332, 335), or those which involve the nature of expenses incurred and claimed as costs, i.e., *Heimann* v. *City of Los Angeles*, 91 Cal.App.2d 311 [204 P.2d 955]. (See *Metropolitan Water Dist.* v. *Adams, supra*, 23 Cal.2d 770, 772; *City of Long Beach* v. *Anderson*, 139 Cal. App. 130, 132 [33 P.2d 875]; *City of Los Angeles* v. *Vickers*, 81 Cal.App. 737 [254 P. 687]), are not applicable to the issue at hand.

From another point of view the questioned portions of section 394 also contravene the constitutional guarantee of just compensation. In substance, these provisions, as applied to an action by a city against a nonresident defendant, purport to authorize the plaintiff to recover additional witness expenses occasioned by a transfer as a legally chargeable item of cost. Under the general rule, a condemnee may not be required to pay any part of the trial costs of a condemner. (*Heimann* v. *City of Los Angeles, supra*, 30 Cal.2d 746, 752; *Oakland* v. *Pacific Coast Lumber etc. Co., supra*, 172 Cal. 332,

334; *San Joaquin etc. Irr. Co.* v. *Stevinson, supra,* 165 Cal. 540.) To the extent that section 394 provides otherwise, when applied to an action in eminent domain, it is unconstitutional.

The plaintiff also objects to the recovery by the defendants of costs in connection with the taking of a deposition and appeals from the order allowing the same. The amount involved is $84.21. The person whose deposition was taken was not called as a witness, nor was his deposition used, although he was present in court at the request of the plaintiff. The motion to strike this item from the defendants' cost bill was based "upon the records and files of the above entitled action and upon the minutes of the court." It appears therefrom that the person in question was in possession of certain documents which were necessary to the preparation and presentation of the defendants' case, and that a subpoena duces tecum had been issued requiring him to produce these documents at the time of the taking of his deposition. The necessity for the expenditure objected to was a subject for determination by the trial court in the exercise of a legal discretion (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266, 275-276 [83 P.2d 503]), and its action in the premises will not be disturbed on appeal.

The orders striking the plaintiff's cost bill and taxing the defendants' costs, from which an appeal has been taken, are affirmed.

The order directing payment of funds on deposit, from which the plaintiff has appealed, is reversed.

Those parts of the interlocutory judgment relating to interest prior to entry thereof, determining the compensation payable to the defendants for the loss of use of their property prior to entry of judgment, and fixing the total amount of compensation payable to them, are reversed, and the remaining parts of the judgment are affirmed, with instructions to the trial court to set aside the interlocutory judgment, together with those portions of the findings of fact and conclusions of law relating to interest prior to judgment, or the issue of compensation payable to the defendants on account of the loss of use of their property prior to judgment; to take such further proceedings as it may deem proper with respect to the issue of the amount of compensation payable to the defendants on account of their loss of possession of the property taken, from the date of the order authorizing the plaintiff to take possession thereof to the date of the judgment here-

inafter to be entered herein; to make findings of fact and draw conclusions of law on that issue; to reconsider, if it deems proper, the effect of the stipulation *re* delinquent taxes and penalties; to make such additional findings of fact and conclusions of law as may be proper concerning the total moneys paid to the defendants to date of the judgment hereinafter to be entered herein; to take such further proceedings as may be proper; to recompute the amount payable to the defendants at the time of entry of such judgment; and to enter judgment accordingly; all in harmony with the views expressed herein and in accord with the evidence and the law in the premises.

Respondents to recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.