[No. H010609. Sixth Dist. June 3, 1994.]

CITY OF HOLLISTER, Plaintiff and Respondent, v.
MATHILDA FRANCES McCULLOUGH et al., Defendants and
Appellants.

COUNSEL

Matteoni, Saxe & Nanda, Norman E. Matteoni and Peggy M. O'Laughlin for Defendants and Appellants.

Meyers, Nave, Riback & Silver, Michael F. Rodriguez and Michael R. Nave for Plaintiff and Respondent.

OPINION

MIHARA, J.—Plaintiff initiated an eminent domain action to acquire a portion of defendants' parcel (hereafter the take) for street, sewer and utilities purposes. The trial court granted plaintiff's *in limine* motion to exclude all evidence of severance damages. After a contested court trial on the value of the take, the court found that the take was worth $22,000. Although defendants presented evidence of the rental value of the take during plaintiff's prejudgment possession of it, the trial court rejected defendants' claim for the prejudgment rental value of the take. On appeal, defendants do not contest the trial court's finding on the value of the take. However, defendants claim that the trial court prejudicially erred in excluding all evidence of severance damages and in failing to award defendants either the prejudgment rental value of the take or prejudgment interest from the date plaintiff took possession of the take. For the reasons expressed below, we reverse.

## FACTS

Defendants own a rectangular parcel of essentially unimproved land in downtown Hollister. The dimensions of defendants' parcel are 299.28 feet from its east to its west border and 170 feet from its north to its south border. The take is a strip of land 30 feet wide along the southern edge of defendants' parcel. Defendants' parcel currently has only a single frontage along its eastern border on Line Street. However, plaintiff plans to put a street called Westside Boulevard along the western edge of defendants' parcel. The construction of Westside Boulevard will require defendants to dedicate a strip of land 42 feet wide along the western border of the parcel. Without Westside Boulevard, much of defendants' parcel would be useless for subdivision purposes because the local zoning ordinance requires each lot to have 35 feet of frontage and mandates that a lot's width may not be less than one-third of its depth. The "downtown residential" zoning applicable to defendants' parcel permits the creation of lots as small as 6,000 square feet.

In June 1986 plaintiff took possession of the take and constructed underground storm drains and sanitary sewer pipelines on it. In 1987 plaintiff initiated this eminent domain action to acquire the take. Plaintiff plans to use this strip of land for a roadway. The parties agreed that the "highest and best use" for defendants' parcel is residential development and that the parcel "can be subdivided." The parties also stipulated that the relevant valuation date was July 17, 1990. Defendants sought to recover compensation for (1) the take, (2) severance damages for the diminution in value of the remainder of the parcel, and (3) the rental value of the take for the period of time plaintiff had possessed it prior to judgment. Plaintiff sought an *in limine* ruling precluding defendants from introducing any evidence of severance damages. The trial court granted plaintiff's motion and ruled that "severance damages are not allowable in the instant case for the reason that, within the framework of existing case law, such damages would be speculative."

Defendants subsequently waived their right to a jury trial and tried the matter to the court. They presented an expert appraiser who testified that defendants' entire parcel was worth $300,000.[1] Since the take contained approximately 17 percent of the square footage of the entire parcel, defendants' appraiser concluded that the take was worth 17 percent of $300,000 which is $51,000. This expert also testified that the price of land in Hollister had increased dramatically between 1986 and 1990. Defendant Charles McCullough testified that the take had a rental value for storage purposes of $200 per month. Plaintiff's expert testified that defendants' entire parcel was worth $83,000, and therefore the take was worth only $14,621. Plaintiff's expert testified that there had been no appreciation in the Hollister real estate market for raw land between 1985 and 1990. The court found that the take had a value of $22,000 and denied defendants' rental value claim. Defendants filed a timely notice of appeal from this judgment.

## DISCUSSION

Private property may be taken for public use only when "just compensation" has been paid to the owner. (Cal. Const., art. I, § 19.) Where practicable, the trier of fact must make a separate assessment of the amount of compensation due the owner for the "property taken" and, where the property acquired is part of a larger parcel, the amount of compensation due the owner for any injury to the remaining property (the remainder). (Code Civ.

---

[1]Defendants' appraiser based this valuation on comparable sales in the area. However, he had adjusted the prices paid for other properties based on the projected "density" of development which would have been permitted on those properties. This "density" adjustment was based on a nontestifying defense expert's calculation that defendants' entire parcel would have yielded seven dwelling units prior to this action.

Proc., §§ 1260.230, 1263.410, subd. (a).) The measure of compensation for the "property taken" is the fair market value of that property. (Code Civ. Proc., §§ 1263.310, 1263.320.) The measure of compensation for injury to the remainder is the amount of damage caused to the remainder by "[t]he severance of the remainder from the part taken" and "[t]he construction and use of the project for which the property is taken in the manner proposed by the plaintiff." (Code Civ. Proc., § 1263.420.) Damages recovered for injury to the remainder are called "severance damages." (*San Diego Gas & Electric Co.* v. *Daley* (1988) 205 Cal.App.3d 1334, 1345 [253 Cal.Rptr. 144].)

## A. *Severance Damages*

 "A condemnation award must once and for all fix the damages that will reasonably occur by reason of *the construction of the public improvements in the manner proposed.*" (*Ellena* v. *State of California* (1977) 69 Cal.App.3d 245, 254 [138 Cal.Rptr. 110], italics added.) To this end, " '. . . any evidence which tends to show the physical condition of the property, the purpose for which it is employed, or any reasonable use for which it may be adapted, is competent.' " (*People* v. *La Macchia* (1953) 41 Cal.2d 738, 751 [264 P.2d 15].) Among other things, the "total effect of the local zoning laws must be considered" in arriving at the appropriate measure of compensation in an eminent domain action. (*People* ex rel. *Dept. Pub. Wks.* v. *Investors Diversified Services, Inc.* (1968) 262 Cal.App.2d 367, 376 [68 Cal.Rptr. 663].) Evidence that local zoning laws would require, as a condition of developing the property, that the owner dedicate the take is relevant to the measure of compensation due to the owner as a result of the taking. (*Id.* at pp. 372-373.)

 "Such factors as the size and shape of the remainder, loss of highway frontage, and impairment of the use of the property by showing the uses to which the property was adaptable prior to the taking and the limited uses to which the property may be devoted thereafter may properly be considered in determining severance damage." (*San Bernardino County Flood Control Dist.* v. *Sweet* (1967) 255 Cal.App.2d 889, 902 [63 Cal.Rptr. 640].) "But evidence as to what the owner intended to do with the land cannot be considered. [Citations.] For there can be no allowance for enhanced damage which an owner 'would suffer by reason of being prevented from carrying out a particular scheme of improvement, existing only in contemplation at the time of trial.' [Citation.]" (*People* v. *La Macchia, supra,* 41 Cal.2d at p. 751.) " 'To recover severance damages . . . , the loss in market value claimed must directly and proximately flow from the taking. Damage which is speculative, remote, imaginary, contingent, or merely possible . . . cannot

serve as a legal basis for recovery.' . . ." (*City of Commerce* v. *National Starch & Chemical Corp.* (1981) 118 Cal.App.3d 1, 13 [173 Cal.Rptr. 176], citation omitted; accord, *County of Santa Clara* v. *Curtner* (1966) 245 Cal.App.2d 730, 746 [54 Cal.Rptr. 257].)

■ Plaintiff's *in limine* motion sought to preclude defendants from recovering any severance damages. Plaintiff presented evidence at the *in limine* hearing that it probably would have conditioned development of defendants' property on "dedication" of the southernmost 60 feet[2] of the property for construction of the proposed roadway. ■ "Dedication" is "the uncompensated transfer of an interest in private property to a public entity for public use." (*Rohn* v. *City of Visalia* (1989) 214 Cal.App.3d 1463, 1470 [263 Cal.Rptr. 319].) ■ Where there is a reasonable probability that development of the property would have been conditioned on dedication of the property taken, compensation to the owner for the harm caused by the taking cannot be based on the property's development potential. (*Contra Costa County Flood Control etc. Dist.* v. *Lone Tree Investments* (1992) 7 Cal.App.4th 930, 937 [9 Cal.Rptr.2d 326].) Because defendants' severance damages claim was based on the development potential of the property, plaintiff claims that its intent to require dedication of the take as a condition of development precludes defendants from recovering any severance damages.

■ Plaintiff correctly points out that severance damages based on the development potential of the property are not recoverable if there is a "reasonable probability" that dedication of the take would have been required as a condition of development. (Cf. *Contra Costa County Flood Control etc. Dist.* v. *Lone Tree Investments, supra,* 7 Cal.App.4th at p. 937.) Nevertheless, proof that a conditional dedication is a "reasonable probability" requires a showing not only that plaintiff would probably have imposed the dedication condition if defendants had sought to develop the property, *but also* that the proposed dedication requirement would have been constitutionally permissible. This is so because it is not a "reasonable probability" that a governmental entity would actually succeed in imposing an unconstitutional dedication requirement. ■ In this case, the record does not support the trial court's implied finding that the proposed conditional dedication was a reasonable probability.

Although there was some dispute over the burdensome nature of multiple dedication requirements conditioning defendants' development of their parcel, plaintiff presented substantial evidence that it would attempt to require

---

[2]Since the proposed roadway will be 60 feet wide, in the absence of acquisition of the take by eminent domain, plaintiff planned to require the dedication of both the take and 30 feet of the remainder. Plaintiff presented evidence that it would probably require the dedication of 30 feet of the remainder if defendants sought to develop the parcel after the taking.

dedication of the southernmost 60 feet of defendants' parcel as a condition of allowing development of the parcel. Plaintiff argued below that the trial court was not empowered to consider whether the proposed dedication condition would have been invalid because no such condition had yet been imposed. That argument is incorrect. In order to evaluate the effect of a potential dedication condition on defendants' severance damages claim, it was necessary for the trial court to determine whether such a condition would have been valid.[3]

██ A conditional dedication is invalid if it deprives the owner of the property of constitutional protections. (*Rohn* v. *City of Visalia, supra,* 214 Cal.App.3d at p. 1470.) A requirement of a conditional dedication of property for street purposes does not offend the Constitution if "it is a condition reasonably related to increased traffic and other needs *of the proposed subdivision . . . ."* (*Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 42 [207 P.2d 1, 11 A.L.R.2d 503], italics added.) However, "[w]here the conditions imposed are not reasonably related to the landowner's proposed use, but are imposed by a public entity to shift the burden of providing the cost of a public benefit to one not responsible, or only remotely or speculatively benefiting from it, there is an unreasonable exercise of police power." (*Rohn* v. *City of Visalia, supra,* 214 Cal.App.3d at p. 1470.) It is a question of fact for the trial court whether a conditional dedication requirement is reasonably related to the owner's proposed use of the property. (*Ayres, supra,* 34 Cal.2d at p. 41.) Our review of a factual finding by a trial court is limited to determining whether the evidence supports the finding. (*Reddy* v. *Gonzalez* (1992) 8 Cal.App.4th 118, 123 [10 Cal.Rptr.2d 55].)

██ The evidence does not support the trial court's implied finding that the proposed conditional dedication requirement was reasonably related to defendants' proposed use of the property. Defendants presented evidence at the *in limine* hearing that the conditional dedication requirement was not related to any additional burdens on city services associated with subdivision of defendants' property. All of the evidence instead reflected that the proposed conditional dedication requirement was aimed at promoting general municipal objectives. Defendants asserted that, in its "before" condition, their parcel could have been subdivided into six lots, three on Line Street and three on Westside Boulevard.[4] Defendants' evidence established that the sewer and drainage improvements on the take were constructed for general

---

[3]In the absence of evidence to the contrary, we presume that the trial court disregarded plaintiff's legally incorrect argument and proceeded to make a finding that the proposed condition would have been valid.

[4]The parties agreed that plaintiff could validly impose a requirement that defendants dedicate the westernmost 42 feet of their property for construction of Westside Boulevard as a condition of developing the property.

citywide purposes, and the construction of the proposed roadway was not merited by any proposed development of defendants' parcel.

In response to this evidence, plaintiff attempted to establish that development of defendants' parcel would increase traffic on both Line Street and Westside Boulevard. However, the evidence elicited by plaintiff established that the impact of defendants' development of their parcel on traffic on those streets would be "very insignificant." Plaintiff also attempted to show that dwellings built on defendants' parcel would utilize the sewer line which had been installed in the take, but the witness pointed out that such dwellings could alternatively use the sewer line running under Line Street.

The testimony of plaintiff's planning director also failed to provide any evidence that the proposed roadway was related to defendants' proposed development of their parcel. Plaintiff's planning director testified that plaintiff wanted to construct the roadway through defendants' parcel "so it would be a connecting street between Line Street to Westside Boulevard." "We require the dedication mainly because the roadway, the plan line roadway is within that property. And we would want to get that property for the purposes of putting that road in." The parties stipulated that plaintiff's "Official Plan Line Map," adopted by plaintiff in 1974, called for the construction of the proposed roadway through defendants' parcel. This map reveals that defendants' property is located in the middle of a city block, more than 1,400 feet long, running from South Street to San Juan Road.[5] Construction of the proposed roadway through defendants' parcel would divide that block in two. The map shows more than 15 parcels in that block, many of which are, like defendants' parcel, capable of being subdivided. Plaintiff's planning director admitted that the purpose of the probable conditional dedication would be to prevent anyone from building on an area which the map had designated as "a planned street." Planned streets were designated on the map "to provide traffic flows for the city of Hollister," "to implement the general plan and to implement the circulation of the general plan and other roadways." The planning director testified that the proposed roadway had been placed entirely on defendants' parcel on the map because the adjacent parcel to the south of defendants' parcel had a residence near its northern border.

This evidence established that the dedication requirement utilized by plaintiff as a defense to defendants' claim for severance damages was unrelated to any proposed development of defendants' parcel. Plaintiff's own evidence showed that the purpose of such a dedication would be merely

---

[5]South Street is approximately 620 feet south of the property, while San Juan Road is about 645 feet north of the property.

to conform to the plan line map which showed a "planned street" through defendants' parcel. The fact that this map was adopted long before there was any proposed development of defendants' parcel or any positive steps taken to acquire the property by eminent domain further indicates that plaintiff's proposed use of a portion of defendants' parcel for street, sewer and utilities purposes was unrelated to defendants' potential development of their parcel. The evidence cannot support the trial court's implied finding that a conditional dedication requirement was a "reasonable probability" because the evidence establishes that no such requirement could have been lawfully imposed.

■ Plaintiff also argues that this court should affirm the trial court's denial of severance damages because (1) the remainder "has not suffered damage," (2) certain items of evidence which defendants utilized at the in limine hearing were inadmissible, and (3) the trial court's ruling was "harmless error." None of these arguments justify affirming the trial court's denial of severance damages. Whether the remainder will be damaged by severance of the take and construction of the proposed roadway is a factual issue which defendants were entitled to place before the trier of fact. The trial court's refusal to allow defendants to prove such damages at trial precluded defendants from making their case. The evidence produced by defendants at the *in limine* hearing could have supported a finding that the development potential of the remainder would be damaged by the severance of the take and the construction of the proposed roadway. In light of this showing, it seems likely that defendants would have been able to prove at trial that this loss of development potential had diminished the market value of the remainder. Thus, we cannot conclude from this record that defendants suffered no severance damages.

The trial court's ruling did not simply exclude certain items of evidence. The trial court refused to allow defendants to introduce *any* proof of severance damages at trial. While an owner may not prove damages by bringing in evidence that the taking will frustrate a "specific plan of development," an owner may introduce a map, diagram or illustration of proposed uses of the property to show whether such uses are feasible and whether the property is adaptable to those uses. (*People* ex rel. *Dept. Pub. Wks.* v. *Princess Park Estates, Inc.* (1969) 270 Cal.App.2d 876, 884 [76 Cal.Rptr. 120]; *People* ex rel. *Dept. of Public Works* v. *Alexander* (1963) 212 Cal.App.2d 84, 93-94 [27 Cal.Rptr. 720].) The record reflects that much of defendants' evidence was aimed at showing the feasibility and adaptability of the remainder to subdivision. Such evidence is admissible. It is not our role to determine on appeal whether some of the testimonial and documentary evidence proffered by defendants might have been objectionable. The trial court excluded all of

defendants' severance damages evidence. The excluded evidence included substantial admissible evidence of severance damages which could have overcome any objections. Hence, the trial court's wholesale exclusion of severance damages evidence was erroneous.

Finally, we cannot conclude that the exclusion of all severance damages evidence was "harmless error." As we have already noted, defendants amassed substantial evidence of severance damages which they proffered at the *in limine* hearing. The trial court precluded defendants from bringing in any evidence of severance damages at trial. No severance damages were awarded. We encounter no difficulty in concluding that it is reasonably probable that a result more favorable to defendants would have occurred in the absence of the trial court's erroneous ruling. Defendants' evidence strongly supports the award of severance damages. In the absence of the taking and the construction of the proposed roadway, defendants' entire parcel could have been subdivided into six lots. Construction of the proposed roadway will limit the potential subdivision of defendants' parcel to no more than four lots. The take itself is essentially equivalent to a lot in square footage, and the compensation given for the take was based on its square footage. However, the severance of the take and the construction of the roadway would reduce the adaptability of the remainder of the property by limiting its potential subdivision yield to four lots. This limitation on the potential subdivision yield of the remainder reduces the fair market value of the remainder. A trier of fact might also conclude that the value of the remainder would be further diminished by the increased cost of developing lots with multiple frontages as opposed to the single frontage lots which could have been developed on defendants' parcel prior to the taking. In sum, the error was prejudicial and requires a retrial on severance damages.

### B. *Compensation for Prejudgment Possession of Take*

Plaintiff took possession of the take in June 1986 and constructed underground sewer and utilities improvements on it. Plaintiff initiated this eminent domain action in November 1987. Defendants presented evidence at trial that the take had a rental value of $200 per month during plaintiff's prejudgment possession. Plaintiff claimed that defendants had waived this claim because they had not made a demand for the rental value of the take sufficiently in advance of trial. The trial court denied defendants' claim. Defendants contest this ruling. Alternatively, they argue that the trial court was required to award them interest on the judgment from the date that plaintiff took possession of the take. We conclude that an award of interest was required.

Interest and rental value are two different forms of compensation for the damage suffered by the condemnee as a result of the condemner's

prejudgment possession of the take. "[J]ust compensation for the taking of . . . property includes not only the actual cash value, or market value of said property, but also the actual cash value of the use of said property from the date of the taking possession thereof up to the date of judgment, if possession is taken by the condemner prior to judgment." (*Metropolitan Water Dist.* v. *Adams* (1940) 16 Cal.2d 676, 680 [107 P.2d 618].) "Legal [or market rate] interest is frequently accepted as the basis for fixing the measure of damages [for the condemner's prejudgment use of the property]." (*Id.* at p. 681; *Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790, 794 [214 Cal.Rptr. 904, 700 P.2d 794]; *City of Burbank* v. *Nordahl* (1962) 199 Cal.App.2d 311, 320 [18 Cal.Rptr. 710]; see also *County of Monterey* v. *W. W. Leasing Unlimited* (1980) 109 Cal.App.3d 636, 646-647 [167 Cal.Rptr. 12] [condemnee not entitled to damages for loss of use because award bore interest from date of possession].) "[T]he purpose of prejudgment interest is to provide recompense for any deprivation of use of the property *taken* prior to the judgment." (*Placer County Water Agency* v. *Hofman* (1985) 165 Cal.App.3d 890, 903 [211 Cal.Rptr. 894].) Since interest is awarded in lieu of the actual value of the condemner's prejudgment use of the property, ". . . the condemnee's right to just compensation includes *the right* to have the award draw interest from the date of possession . . . ." (*Riverside County Flood etc. Dist.* v. *Halman* (1968) 262 Cal.App.2d 510, 515 [69 Cal.Rptr. 1], italics added.) Code of Civil Procedure section 1268.310 codifies a condemnee's right to interest from the date of possession. The condemnee is entitled to interest or other compensation for the value of the condemner's use of property even where the valuation date is the date of trial and the property is worth more at the time of trial than it was worth when the condemner took possession. (*City of San Rafael* v. *Wood* (1956) 144 Cal.App.2d 604, 607 [301 P.2d 421].)

■ It was undisputed at trial that plaintiff had taken possession of the take in June 1986 and constructed underground improvements thereon. While the trial court could have discounted the evidence adduced by defendants of the take's rental value, it could not ignore the statutory mandate of Code of Civil Procedure section 1268.310, which mandates that the compensation awarded for property taken in an eminent domain action "shall" draw interest from the date of possession if possession is taken prior to judgment. Plaintiff claims on appeal that defendants waived their right to recover interest on the judgment by failing to so request in the trial court. We disagree. Defendants were not required to request interest because they were entitled to it as a matter of law. (Cf. *Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 856 [237 Cal.Rptr. 282].) The applicability of Code of Civil Procedure section 1268.310 depends only on the date of possession. This matter was addressed at trial and was undisputed. Defendants' contention

that they were entitled to the prejudgment rental value of the take gave plaintiff adequate notice of the importance of this issue. Defendants are entitled to prejudgment interest on the $22,000 award from June 1986 to the date of judgment.

## CONCLUSION

The judgment is reversed. The trial court is ordered to award defendants prejudgment interest on the $22,000 award from June 1986 to the date of judgment. Defendants are entitled to a new trial on their claim for severance damages. Defendants shall recover their costs on appeal. (Code Civ. Proc., § 1268.720.)

Premo, Acting P. J., and Wunderlich, J., concurred.